UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KIM GREENGUS and TODD GREENGUS,
individually, and as parents and natural guardians
of infant RG,

        Plaintiffs,

     -against-

LONG BEACH PUBLIC SCHOOLS, LISA WEITZMAN,
JEAN MARIE LILLEY, LAUREN SCHNEIDER,
SABRINA CANTORE, VINCENT RUSSO,
DR. RANDIE BERGER, DR. MICHELE NATALI,
DAVID WEISS, in their individual and official capacities
and JOHN AND JANE DOE'S 1-100, whose identities
are unknown at present,

        Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No.: _____

   Plaintiffs, KIM GREENGUS and TODD GREENGUS, individually, and as parents and

natural guardians of infant RG, by their attorneys, Gerstman Schwartz and Malito, LLP,

complaining of the Defendants LONG BEACH PUBLIC SCHOOLS, LISA WEITZMAN, JEAN

MARIE LILLEY, LAUREN SCHNEIDER, SABRINA CANTORE, VINCENT RUSSO, DR.

RANDIE BERGER, DR. MICHELE NATALI, DAVID WEISS, and JOHN AND JANE DOE'S

1-100, set forth and allege as follows:

## PRELIMINARY STATEMENT

   1.  This action arises from the Defendants' unlawful, unconscionable, and perverse

violations of the constitutional rights of autistic children entrusted to their care as special education

students at Long Beach Middle School, one of six schools operated by Defendant LONG BEACH

PUBLIC SCHOOLS (hereinafter "the District").

   2.  Beginning in or about 2009 and lasting through the Fall of 2014, Defendant LISA

WEITZMAN, a tenured special education teacher at Long Beach Public School, along with her

teaching assistants, Defendants JEAN MARIE LILLEY and LAUREN SCHNEIDER, routinely subjected the children in their special education classroom to a litany of physical and psychological abuses.

3.  All of the children in the classroom were severely autistic and non-communicative and, as a result of their conditions, became easy targets of physical, psychological, and sexual abuse by Defendants WEITZMAN, LILLEY, and SCHNEIDER.

4.  Among the children subjected to this inhumane abuse was infant RG, a severely autistic and non-communicative child that, among other unconscionable abuses, was subjected to forcible confinement in the classroom bathroom, forcibly thrown into walls, sprayed at close proximity with noxious scented chemicals and aerosols, thrown into and hit with classroom furniture, violently restrained, and verbally abused.

5.  On other occasions, as a perverse disciplinary measure, Defendant WEITZMAN would dig her high heel stiletto shoes into Plaintiff RG's feet, leaving him wailing and screaming in agonizing pain.

6.  Plaintiff RG was also forcibly and directly abused by Defendants WEIZTMAN, LILLEY, and SCHNIEDER when, on several occasions, they would physically push, tug, restrain, and strike him as he was exiting the school bus in the mornings on his way to the classroom.

7.  Plaintiff RG, who also suffers from celiac disease and whose condition was known to the District, was deliberately fed gluten rich foods by Defendants WEITZMAN, LILLEY, and SCHNEIDER, such as McDonald's, so as to exacerbate his digestive condition and to cause stomach and abdominal pain.

8.     Defendants WEITZMAN, LILLEY, and SCHNEIDER often engaged in these acts of abuse under the influence of illicit drugs such as marijuana which, upon information and belief, Defendants routinely used on school property, both inside and outside of the classroom.

9.     District administrators, including Defendant VINCENT RUSSO, Special Education Coordinator, Defendant SABRINA CANTORE, Executive Director of Pupil Personnel Service, Defendant DR. RANDIE BERGER, Director of Human Resources, and Defendant DR. MICHELLE NATALI, principal of Long Beach Middle School, were repeatedly informed of these shocking acts of abuse by various witnesses and staff members but refused to take any measures to halt the acts of abuse, to discipline the perpetrators, or to report the acts to the police.

10.     Instead, Defendants RUSSO, NATALI, BERGER, and CANTORE took deliberate steps to conceal these unconscionable acts of abuse, threatened witnesses with retributive and retaliatory action, and actively transferred and/or terminated any staff members of the Long Beach Middle School if they did not agree to comply with directives to conceal the acts of abuse perpetrated by Defendants WEITZMAN, LILLEY, and SCHNEIDER.

11.     Superintendent of Long Beach Public Schools, Defendant DAVID WEISS, was also informed of these acts of abuse and, in concert with Defendants RUSSO, NATALI, BERGER, and CANTORE, directed District administrators to continue to conceal reports of abuse in addition to adopting an affirmative policy of requiring the silent resignations of any witnesses that refused to comply with the District's policy of concealment.

12.     Plaintiffs KIM GREENGUS and TODD GREENGUS, parents of infant RG, only became aware of these concealed acts of abuse in or about October 2015 when an unidentified whistleblower circulated an anonymous letter to the parents of all of the children who were subjected to abuse while students in Defendant WEITZMAN's special education classroom.

3

13.     To date, upon information and belief, despite being fully aware of the extent of the abusive acts perpetrated by Defendants WEITZMAN, LILLEY, and SCHNEIDER, none of the parents of any children subjected to abuse, including Plaintiffs, have been formally notified by the District of any allegations, facts, or reports of abuse.

14.     Upon information and belief, the District persisted in its policy of active concealment and the intimidation of witnesses even after Defendant WEITZMAN was formally suspended in the Fall of 2014 as a result of witness reports and the internal investigations conducted by Defendants RUSSO, NATALI, BERGER, and CANTORE.

15.     Beginning on or about March 4, 2016, the District commenced a series of public hearings, pursuant to New York Education Law § 3020, to determine whether the actions of Defendant WEITZMAN warranted termination.

16.     Upon information and belief, as the hearings into the acts of abuse perpetrated by Defendant WEIZTMAN are continuing and ongoing, Defendant WEITZMAN has not been discharged and remains a salaried employee with LONG BEACH PUBLIC SCHOOLS.

17.     Upon information and belief, no disciplinary, corrective, or punitive actions have been initiated by the District, at any point, against Defendants LILLEY and SCHNEIDER.

18.     As a result of the Defendants acts of abuse and subsequent concealment of said acts by LONG BEACH PUBLIC SCHOOLS, Plaintiffs KIM GREENGUS and TODD GREENGUS, individually and as parents and natural guardians of infant RG, hereby commence this federal action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against all Defendants herein named for the deplorable, callous, and sadistic violations of the civil rights of infant RG under the United States Constitution.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction, pursuant to 28 U.S.C. § 1331, over all claims alleged herein arising under 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Constitution of the United States.

20.     Venue properly lies in this Court because it is a judicial district in which the events and omissions giving rise to the claims alleged herein occurred.

## PARTIES

21.     Plaintiff KIM GREENGUS ("Ms. Greengus") is the mother and natural guardian of infant RG, and maintains a residence in Long Beach, Nassau County, New York.

22.     Plaintiff TODD GREENGUS ("Mr. Greengus") is the father and natural guardian of infant RG, and maintains a residence with his spouse, KIM GREENGUS, in Long Beach, Nassau County, New York.

23.     Infant Plaintiff RG ("RG") is the child of Plaintiffs KIM AND TODD GREENGUS, and resides with his parents in Long Beach, Nassau County, New York.

24.     At all times herein referenced, RG was a special education student at Long Beach Middle School, located at 239 Lido Boulevard, Lido Beach, New York 11561.

25.     Defendant LONG BEACH PUBLIC SCHOOLS is a school district that operates Long Beach Middle School, in addition to five (5) others schools, with its principal office located at 235 Lido Boulevard, Lido Beach, New York 11561.

26.     Defendant LISA WEITZMAN ("Weitzman"), at all times referenced herein, was a tenured special education teacher and employee of LONG BEACH PUBLIC SCHOOLS and teacher of RG.

27.     Defendant JEAN MARIE LILLEY ("Lilley"), at all times referenced herein, was a full-time teaching assistant and employee of LONG BEACH PUBLIC SCHOOLS and assisted Defendant WEITZMAN in her duties.

28.     Defendant LAUREN SCHNEIDER ("Schneider"), at all times referenced herein, was a full-time teaching assistant and employee of LONG BEACH PUBLIC SCHOOLS and assisted Defendant WEITZMAN in her duties.

29.     Defendant VINCENT RUSSO ("Russo"), at all times referenced herein, was the Coordinator of Special Education and employee of LONG BEACH PUBLIC SCHOOLS.

30.     Defendant SABRINA CANTORE ("Cantore"), at all times referenced herein, was the Executive Director of Pupil Personnel Services and employee of LONG BEACH PUBLIC SCHOOLS.

31.     Defendant DR. RANDIE BERGER ("Berger"), at all times referenced herein, was the Director of Human Resources and employee of LONG BEACH PUBLIC SCHOOLS.

32.     Defendant DR. MICHELE NATALI ("Natali"), at all times referenced herein, was the Principal of Long Beach Middle School and employee of LONG BEACH PUBLIC SCHOOLS.

33.     Defendant DAVID WEISS ("Weiss"), at all times referenced herein, was the Superintendent of Schools and employee of LONG BEACH PUBLIC SCHOOLS.

34.     Defendants JOHN and JANE DOE's 1-100, are unknown at present but, upon information and belief, are employees of LONG BEACH PUBLIC SCHOOLS that witnessed, concealed, or otherwise participated in the acts of abuse to which Plaintiff RG was subjected and, as such, Plaintiffs reserve the right to amend the instant pleading to include the identities of such persons, when and if such identities become known, within the appropriate limitations period.

## **FACTUAL ALLEGATIONS**

35.     Infant Plaintiff RG is a fourteen (14) old male who was diagnosed with autism and William's Syndrome at an early age and requires special education services.

36.     From September 2012 until about November 2014, RG was a special education student at Long Beach Middle School assigned to the classroom of Defendant WEITZMAN.

37.     Upon information and belief, Plaintiff RG was one of among five other special education students in the classroom, all of whom were severely autistic and/or diagnosed with other cognitive and developmental disabilities.

38.     At all times referenced herein, Defendant WEITZMAN shared the classroom with two full-time teaching assistants, Defendants LILLEY and SCHNEIDER, for over eight (8) years the span of which encompassed the time period during which Plaintiff RG was a student at Long Beach Middle School.

39.     Upon information and belief, beginning in or around September 2012 and lasting until the Fall of 2014, Defendant WEITZMAN, with the assistance of Defendants LILLEY and SCHNEIDER, repeatedly engaged in a course of physically and psychologically abusive conduct toward the students in their care, including Plaintiff RG.

40.     Specifically, Defendant WEITZMAN, with the assistance of Defendants LILLEY and SCHNEIDER, routinely used the classroom bathroom to restrain students who they perceived to be misbehaving.

41.     Plaintiff RG was repeatedly locked in the classroom bathroom for prolonged periods of time, sometimes as long as half an hour, while screaming in fear due to the restraint and isolation.

7

42.     Plaintiff RG, who was also diagnosed with celiac disease at an early age, often experienced gastrointestinal disturbances in the classroom and, as a result, was verbally castigated by Defendants WEIZTMAN, LILLEY, and SCHNEIDER who often told RG that he smelled, stunk, and used other profanities while yelling at him such as "swamp ass."

43.     Defendant WEITZMAN and LILLEY would confront RG and scream directly into his face that he smelled bad and, on several occasions, sprayed RG at close proximity with noxious air fresheners, aerosol disinfectants such as Lysol and Glade, and would announce as a warning to the remaining students in the class that "this is how we get rid of smelly children."

44.     Despite the facts that Defendants WEITZMAN, LILLEY, and SCHNEIDER were aware of RG's diagnosis of celiac disease and aware that he could only consume foods pursuant to a strictly monitored diet, they deliberately fed RG gluten rich foods brought to the classroom from outside of the school, such as McDonald's, in order to exacerbate RG's stomach discomfort and to cause pain.

45.     On another occasion, as an inhumane disciplinary measure purportedly in response to RG stomping in the classroom, Defendant WEITZMAN dug her high heel stiletto shoes into the feet of RG, thereby causing extreme and agonizing pain.

46.     Despite RG's cries and pleading to stop, Defendant WEITZMAN screamed at RG that "You're just pissing me off!" and continued to press deeply into RG's feet with her heels, for minutes at a time, so as to restrain RG's movement and inflict further pain.

47.     As RG continued to wince and scream in pain, Defendant WEITZMAN yelled "You are going to stop doing this you little motherfucker!" and, despite his continued pleas to stop, persisted in digging her heels into RG's feet.

48.     As a general practice to control and intimidate the students, Defendants WEITZMAN, LILLEY, and SCHNEIDER would engage in violent, aggressive, and sadistic conduct directed toward RG and the other students.

49.     Defendants WEITZMAN, LILLEY, and SCHNEIDER routinely tugged on RG's clothing and shirts, would violently strike, jostle and pull RG when he did not comply with their instructions and, at other times, would forcibly pull RG from chairs, force RG into chairs, and would physically throw RG into classroom furniture.

50.     Defendant WEITZMAN, LILLEY, and SCHNEIDER would also lead RG, along with other students in their care, through the hallways of the Long Beach Middle School in a line while forcibly holding them by the back of their necks as a form of control and restraint.

51.     At one point while forcibly leading RG and other students through the hallway by their necks, RG reached to pull a fire alarm located in the hallway. In response Defendants WEITZMAN and SCHNEIDER grabbed, forcibly restrained, and violently slammed RG into a wall. RG was left in the hallway trembling in pain.

52.     Upon information and belief, the acts of Defendant WEITZMAN and SCHNEIDER of restraining and slamming RG into a wall were recorded on video surveillance equipment present in Long Beach Middle School. This recording currently remains in the possession of the District.

53.     Plaintiff RG was also physically assaulted and battered by Defendant LILLEY when he refused to disembark from his school bus in the mornings. On one occasion, Defendant LILLEY forcibly grabbed RG by the wrists and physically dragged him from the bus, threw him onto the sidewalk, and continued to violently push and prod RG into the school building entrance from behind.

54.     During a gym session, Defendant SCHNEIDER positioned herself on the floor in front of RG with her legs spread open in a sexually suggestive manner and then proceeding to kiss RG.

55.     Upon information and belief, Defendant SCHNEIDER was witnessed kissing RG on more than one occasion.

56.     Over the years, many teaching assistants and staff members employed at Long Beach Middle School witnessed these acts of harassment and physical abuse take place in RG's classroom at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER.

57.     Upon information and belief, Defendants WEITZMAN, LILLEY, and SCHNEIDER often engaged in their acts of harassment against RG and other students while abusing drugs, and on many occasions were witnessed smoking or otherwise consuming marijuana inside and outside of the classroom.

58.     At various points between September 2012 and the Fall of 2014, numerous witness reports and complaints concerning the actions of Defendants WEITZMAN, LILLEY, and SCHNEIDER were made to District administrators.

59.     In fact, reports were made to District administrators, and specifically to Defendant RUSSO and to Defendant NATALI, concerning the abusive conduct of Defendants WEITZMAN, LILLEY, and SCHNEIDER as early as 2009.

60.     Among the other sadistic acts of harassment reported and witnessed were the forcible restraint of a student's hands and feet with zip ties, persistent and unrelenting verbal abuse, forcing a student to masturbate in front of the class, sexual exhibition of student genitalia during urination, dispensing non-prescribed medication to students, the duct taping of students limbs and clothing as a form of restraint, permitting students to play with their feces and urine, and

deliberately taunting students to the point of inciting emotional tantrums and then violently restraining said students by sitting on the students' backs and holding down their legs and arms.

61. In or about the Spring of 2014, Defendants CANTORE, RUSSO, BERGER, and NATALI, at the direction and insistence of Defendant WEISS, conducted formal investigations into the reports and complaints of abuse that were brought directly to their attention.

62. Throughout this process, numerous witnesses were jointly interviewed by Defendants CANTORE, RUSSO, BERGER, and NATALI.

63. The District administrators, including Defendants CANTORE, RUSSO, BURGER, and NATALI, conducted these investigative interviews with the assistance of their counsel and attorneys from the law firm of Ingerman Smith, LLP.

64. Upon information and belief, both the District and Ingerman Smith, LLP were given, and remain in possession of, various forms of evidence documenting the abuse at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER. Such evidence includes witness statements and photographs depicting sexual and physical abuse being committed against students, some of which are believed to include depictions of Plaintiff RG.

65. In recognition of the severity of the abuse perpetrated by Defendants WEIZMAN, LILLEY, and SCHNEIDER, several witnesses in the course of the interviews, upon information and belief, referred to Defendant WEITZMAN's classroom as a "torture room" and the "classroom of horror."

66. Among the witnesses that came forward with complaints and reports directly to Defendants CANTORE, RUSSO, BERGER, and NATALI, were teachers, teaching assistants, part-time teachings assistants, school staff members, and bus drivers – all of whom were witnesses,

at one point or another, to various acts of abuse and harassment directed toward Plaintiff RG, as well other children in Defendant WEITZMAN's classroom.

67.     Defendants WEITZMAN, LILLEY, and SCHNEIDER were also directly questioned and interviewed by Defendants CANTORE, RUSSO, BERGER, and NATALI during this investigative process.

68.     Defendant WEISS, as District Superintendent, was directly informed and monitored the progress of the investigations by Defendants CANTORE, RUSSO, BERGER, and NATALI as they were occurring.

69.     Upon information and belief, the internal investigations conducted by Defendants CANTORE, RUSSO, BERGER, and NATALI confirmed the accuracy of the reports and complaints of abuse brought to their attention.

70.     Despite receiving and confirming numerous reports and complaints of physical and sexual abuse between 2011 and the Fall of 2014, Defendants CANTORE, RUSSO, BERGER, and NATALI threatened complaining witnesses to keep silent or to risk dismissal, transfer, and other forms of retaliation.

71.     Upon information and belief, pursuant to the District's deliberate policy of concealment, as instituted by Defendants CANTORE, RUSSO, BERGER, and NATALI, all of the complaining witnesses that came forward to expose the acts of abuse were, in fact, either transferred from Defendant WEITZMAN's classroom, transferred from Long Beach Middle School, forced to silently resign, or were otherwise terminated.

72.     Upon information and belief, rather than take any corrective or punitive measures to ensure that Plaintiff RG and the other students in the classroom were protected from physical abuse at the hands of their teachers between 2012 and 2014, Defendant WEISS, as Superintendent,

instituted a policy of arranging and directly negotiating for the silent resignation of any complaining witnesses that came forward with information documenting the abuse at the hands of Defendant WEITZMAN, LILLEY, and SCHNEIDER.

73.    Upon information and belief, during several meetings in or about the Fall of 2014, Defendants CANTORE, RUSSO, BERGER, NATALI, and WEISS discussed and agreed to continue to conceal the acts of abuse in order to ensure that the District did not lose state and federal funding for its Special Education programs and, further, to conceal their own repeated failures to put an end to the abusive acts of which they were aware as early as 2009.

74.    At no point were any corrective or punitive measures taken against Defendants WEITZMAN, LILLEY, or SCHNEIDER.

75.    Upon information and belief, Defendant WEITZMAN, without any formal notification or announcement, was secretly suspended by the District in November 2014.

76.    Despite the suspension of Defendant WEITZMAN, at no point did the District disclose to or inform the parents of any students involved that their children were subjected to any form of abuse.

77.    Plaintiffs KIM and TODD GREENGUS, moreover, never received any notification or indication that Defendant WEITZMAN was suspended due to confirmed allegations of child abuse.

78.    Following the suspension of Defendant WEITZMAN, Plaintiff TODD GREENGUS, on or about November 2014, contacted Defendant RUSSO by telephone to inquire as to the reason for the suspension.

79.     Despite having full knowledge that Plaintiff RG was abused and physically assaulted at the hands of Defendant WEITZMAN, Defendant RUSSO informed Plaintiff TODD GREENGUS that WEITZMAN was suspended for "personal reasons."

80.     Beginning in or around the Fall of 2014, Plaintiffs KIM and TODD GREENGUS began to notice unusual behaviors in Plaintiff RG. For example, Plaintiff RG would become very agitated and combative when boarding and disembarking the school bus on the way to the classroom. Plaintiff RG would exhibit similar agitated and nervous behaviors whenever he was in a car or vehicle, and would attempt to grab the keys out of the ignition.

81.     These troubling avoidance behaviors and agitated reactions raised concerns with Plaintiffs.

82.     As a result, Plaintiffs KIM and TODD GREENGUS arranged for several meetings with Defendants RUSSO, CANTORE, and WEISS between the Fall of 2014 and Spring of 2015. During these meetings, Plaintiffs discussed RG's avoidance behaviors and what could be done to accommodate him.

83.     During this time, Defendant CANTORE, RUSSO, and WEISS continued to withhold the fact that Plaintiff RG had been subjected to abuse at the hands of Defendant WEITZMAN, LILLY, and SCHNEIDER. When asked by Plaintiffs would could be done and why RG was exhibiting such strange and unusual behavioral changes, Defendant CANTORE responded that she "did not know" and "would need to gather more data."

84.     Specifically, in or about April 2015, Plaintiffs had an annual meeting with Defendants WEISS and CANTORE and, once more, inquired as to basis for Defendant WEITZMAN's suspension. To this direct inquiry Defendant WEISS responded that "something personal had happened" and that he "was not in a position to disclose any specifics."

14

85.     In response to Defendant WEISS' vague and evasive response, Plaintiff TODD GREENGUS specifically inquired whether Defendant WEITZMAN's suspension was in any manner connected to RG or if RG was involved in any way. Despite having full knowledge of the abuse to which RG was subjected, Defendant WEISS denied the connection and answered "No."

86.     It was not until October 2015, nearly a year after the suspension, that an unidentified whistleblower circulated an anonymous letter to the parents of the all of the children believed to have been involved in the acts of abuse at the hands of Defendant WEITZMAN, including Plaintiffs, and set forth, for the first time, the allegations and confirmed reports that the District had concealed for years.

87.     In the wake of the public exposure of Defendant WEITZMAN's acts of abuse, the District commenced a public hearing[1] pursuant to Education Law § 3020 to determine whether the termination of Defendant WEITZMAN was warranted.

88.     The hearings began on or about March 4, 2016 and, upon information and belief, are ongoing.

89.     On March 11, 2016 the undersigned submitted a formal request under the New York State Freedom of Information Law ("FOIL"), Public Officer's Law, Section 87, requesting that the District furnish any and all transcripts generated throughout the course of the public proceedings under Education Law § 3020 in connection with Defendant WEITZMAN.

90.     By letter dated April 11, 2016, the District denied the undersigned's request to release the transcripts of the public hearings on the ground that "release of the hearing records

---

[1].     On March 30, 2016, in the wake of the public hearings and formal charges seeking the termination of Defendant Weitzman, attorney Gerard N. Misk (Ginsburg & Misk LLP) filed a Petition in the New York State Supreme Court, County of Nassau, seeking leave to file a late Notice of Claim, pursuant to General Municipal Law 50-e, on behalf of the parents of five other children believed to have been subjected to abuse at the hands of Defendant Weitzman, Lilley, and Schneider between 2011 and 2014. See Gilmore, et al. v. Long Beach Public Schools, Index No.: 602213/2016, NYSCEF Docket No. 1.

would constitute an unwarranted invasion of personal privacy" – an active attempt to continue to conceal the full scope of the acts of abuse and constitutional violations that took place at the hands of Defendant WEITZMAN, LILLEY, and SCHNEIDER.

91.     To this day, as a result of the Defendants' active policy of concealment, Plaintiffs have had no opportunity to ascertain the full extent of the abuse that RG has endured at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER.

92.     Upon information and belief, the acts of abuse detailed herein constitute only a partial record the remainder of which remains in full possession of the District and the offices of its attorneys, Ingerman Smith, LLP.

## FIRST CAUSE OF ACTION

42 U.S.C. § 1983 – Substantive Due Process
(As against Defendant Long Beach Public Schools)

93.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

94.     Under the Fourteenth Amendment to the United States Constitution, a substantive due process violation occurs when, among other things, a state actor infringes upon an individual's right to bodily integrity.

95.     Over the course of several years, beginning in 2012 and until Defendant WEITZMAN's suspension in the Fall of 2014, Plaintiff RG was deliberately, callously, and inhumanely subjected to a litany of physical and psychological abuses by Defendants WEITZMAN, LILLEY, and SCHNEIDER.

96.     During the time period in which Plaintiff RG was a student at Long Beach Middle School, District administrators, including Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS, were repeatedly made aware of witness reports and complaints concerning the

physical abuse and injuries to which Plaintiff RG was subjected at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER.

97.    Despite receiving numerous reports and confirming the accuracy of the reports through internal investigations, District administrators, including Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS deliberately failed to take any corrective action to protect Plaintiff RG or to otherwise discipline or remove Defendants WEITZMAN, LILLEY, and SCHNEIDER from a position to continue to inflict physical and psychological harm upon Plaintiff RG.

98.    Rather, District administrators, including Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS, threatened complaining witnesses with retaliatory conduct and, upon information and belief, did in fact terminate, transfer, and/or permitted the silent resignation of any complaining witnesses that refused to comply with the District's policy of concealment with respect to the documented acts abuse directed at Plaintiff RG.

99.    The actions of Defendants RUSSO, CANTORE, NATALI, and WEISS constituted a de facto policy of deliberate concealment and indifference to the physical safety of Plaintiff RG and, thereby, resulted in the persistent, brutal, inhumane, and conscience shocking deprivation of RG's constitutional rights at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER.

100.    As a direct and proximate result of the District's deliberate policy of concealment and indifference, Plaintiff RG was left defenseless against the sadistic acts of Defendants WIETZMAN, LILLEY, and SCHNEIDER and sustained severe physical, psychological, and emotional damages.

## SECOND CAUSE OF ACTION

42 U.S.C. § 1983 – Substantive Due Process
(As against Defendants Russo, Cantore, Berger, Natali, and Weiss)

101.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

102.    Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS, as high level district administrators, at all times occupied a supervisory role in the District and, as such, could have intervened to prevent Defendants WEITZMAN, LILLEY, and SCHNEIDER from continuing to physically and psychologically abuse Plaintiff RG.

103.    Between 2012 and 2014, Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS were repeatedly informed of and confirmed, through internal investigations, reports detailing the sadistic methods by which Defendants WEITZMAN, LILLEY, and SCHNEIDER tormented, battered, and assaulted Plaintiff RG.

104.    Despite these reports and investigations, Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS failed to take any steps to ensure that Plaintiff RG was protected, or to otherwise ensure that Defendants WEITZMAN, LILLEY, and SCHNEIDER were disciplined, discharged, or otherwise transferred so to prevent them from continuing to abuse Plaintiff RG.

105.    Instead, Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS took affirmative steps to conceal the reports of abuse, threatened retaliatory action against any complaining and/or reporting witnesses who refused to comply with their policy of concealment, and otherwise terminated or permitted the silent resignation of complainants that came forward with information pertaining to the abuse of RG at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER.

18

106.    Due to the deliberate failure of Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS to respond to and remedy the documented reports of abuse, Defendants exhibited a complete and deliberate indifference to the safety and constitutional rights of Plaintiff RG and, as such, were personally involved in the deprivations and injuries inflicted upon him.

107.    As a direct and proximate result of the actions and omissions of Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS, Plaintiff RG was left defenseless against the sadistic acts of Defendants WIETZMAN, LILLEY, and SCHNEIDER and sustained severe physical, psychological, and emotional damages.

## THIRD CAUSE OF ACTION

42 U.S.C. § 1983 – Substantive Due Process
(As against Defendants Weitzman, Lilley, and Schneider)

108.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

109.    Between 2012 and 2014, Defendants WEITZMAN, LILLEY, and SCHNEIDER, engaged in wanton, malicious, sadistic, and conscious shocking acts of physical and psychological abuse directed at Plaintiff RG including, but not limited, physical battery, violent restraint, and deliberate infliction of debilitating pain.

110.    Defendants WEITZMAN, LILLEY, and SCHNEIDER often engaged in these acts under the influence of drugs, and used their position of authority to inflict sadistic and inhumane disciplinary measures and gratuitous abuse upon Plaintiff RG.

111.    Defendants' malicious and sadistic abuses of the governmental power granted to them constituted the use of excessive force, were solely intended to oppress and injure Plaintiff RG, and served no legitimate governmental interest.

19

112.   As a direct result and proximate result of the inhumane actions of Defendants WEITZMAN, LILLEY, and SCHNEIDER, Plaintiff RG sustained severe physical, psychological, and emotional damages.

### FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 – Equal Protection
(As against all Defendants)

113.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

114.   At all times herein referenced, Defendants were aware that Plaintiff RG was non-communicative and had been diagnosed with William's Syndrome, autism, and celiac disease.

115.   Defendants were aware and had knowledge that the joint presence of these conditions and disabilities severely impaired Plaintiff RG so as to require a special education environment and a carefully controlled diet.

116.   Defendants WEITZMAN, LILLEY, and SCHNEIDER were at all times aware of Plaintiff RG's conditions and deliberately targeted him for physical and psychological abuse on the basis of these disabilities - treatment that would not have occurred but for the fact of Plaintiff's RG's disabilities.

117.   Defendants WEIZTMAN, LILLEY, and SCHNEIDER were aware that Plaintiff RG could not communicate or relate the instances of the abuse that he had suffered to anyone, including his parents or other staff members at Long Beach Middle School, and thus chose him as a convenient target for their malicious and sadistic acts of abuse.

118.   Similarly, Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS, by creating and implementing a deliberate policy of concealment, relying on the fact that Plaintiff RG could not communicate or relate the acts of abuse directed against him, intentionally discriminated

against Plaintiff RG on this basis of his disability and permitted him to continue to be subjected to physical and psychological abuse at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER.

119.    Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS knew to a moral certainty that their policy of concealment and deliberate failure to discipline, discharge, or transfer Defendants WEITZMAN, LILLEY, and SCHNEIDER would effectively trap Plaintiff RG within a continually abusive and damaging environment.

120.    No governmental interest or rational basis existed to justify the discriminatory acts of abuse and policies adopted to cover up such abuse, thereby perpetuating it, against Plaintiff RG.

121.    As such, Plaintiff RG was deprived of his rights on the basis of his disabilities in blatant violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

122.    As a direct result and proximate result of the inhumane actions of Defendants and deliberate policies instituted by the District, Plaintiff RG sustained severe physical, psychological, and emotional damages.

## FIFTH CAUSE OF ACTION

42 U.S.C. § 1983 and § 1985(3) – Conspiracy
(As against Defendants Weitzman, Lilley, Schneider)

123.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

124.    At all relevant times referenced herein, Defendants WEITZMAN, LILLEY, and SCHNEIDER actively conspired amongst each other to conceal, and thereby perpetuate, the acts of abuse to which they were subjecting Plaintiff RG and his classmates.

125.   On several occasions between September 2012 and Fall 2014, when confronted by part-time teaching assistants objecting to their abusive practices, Defendants WEITZMAN, LILLEY, and SCHNEIDER threatened to report said objectors to District administrators and to instigate disciplinary proceedings against them.

126.   At various points, Defendants WEITZMAN, LILLEY, and SCHNEIDER would use their cell phones to record objectors' movements and actions with the threat of creating a record for disciplinary action if they did not keep silent about the abusive acts they had witnessed.

127.   Moreover, Defendants LILLEY and SCHNEIDER, on or about September 2013, after an episode of forcibly restraining a female student by holding her down to ground, were specifically instructed by Defendant WEITZMAN, and expressly agreed, that they will never discuss what they have seen and done in the classroom. Specifically, Defendant WEITZMAN stated: "What you have seen here can never be discussed."

128.   Pursuant to their agreement, at no point did Defendants WEITZMAN, LILLY, or SCHNEIDER come forward or report any of their sadistic acts to District administrators and, in this manner, ensured that Plaintiff RG and the other students in the classroom would continue, for years, to be subjected to their inhumane abuses.

129.   As a direct and proximate result of Defendants' cruel covenant of concealment, Plaintiff RG was in fact subjected to continuous abuses of his bodily integrity and the deprivation of his constitutional rights, thereby sustaining severe physical and psychological damages.

## SIXTH CAUSE OF ACTION

42 U.S.C. § 1983 and § 1985(3) – Conspiracy
(As against Defendants Russo, Cantore, Berger, Natali, and Weiss)

130.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

131.   At all relevant times referenced herein, Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS actively conspired amongst each other to conceal, and thereby perpetuate, the acts of abuse to which they Plaintiff RG and his classmates were subjected.

132.   Between September 2012 and Fall 2014, Defendants received numerous reports and complaints detailing the abuse that Plaintiff RG was being subjected to at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER.

133.   Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS knew that if reports of this abuse were to become public, the District would risk losing federal and state funding for its special educations programs and would, thereby, place their jobs and careers at risk.

134.   Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS were also aware, as early as 2009, that Defendants WEITZMAN, LILLEY, and SCHNEIDER were routinely tormenting and abusing the special education children in their care but deliberately chose to conceal these reports and permitted the abuse to continue.

135.   Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS, with full knowledge of their prior failures to act to prevent the abuse and relying upon Plaintiff RG's and his classmates' inability to communicate, through a series of meetings in or about Spring 2013, agreed to engage in a policy of concealment by continuing to permit Defendants WEITZMAN, LILLEY, and SCHNEIDER to abuse Plaintiff RG with impunity while simultaneously intimidating, terminating, transferring and/or permitting the silent resignation of any complaining witnesses employed by Long Beach Middle School.

136.   Specifically, one veteran teacher at Long Beach Middle School complained to Defendants RUSSO, CANTORE, BERGER, and NATALI, in or about Spring of 2013, that she

had witnessed abuse of students at the hands of Defendant WEITZMAN. Upon information and belief, this teacher was terminated less than a week later for "insubordination."

137.   In or about Fall of 2013, a teaching assistant witnessed Defendant WEITZMAN forcibly restraining a female student by pinning her to ground and made a formal report to Defendants RUSSO, CANTORE, BERGER, and NATALI. Upon information and belief, this teaching assistant was subsequently transferred without explanation.

138.   In or about Fall 2013, a teaching assistant witnessed Defendant LILLEY pushing and forcibly handling special education students during gym class and reported this abuse to Defendants RUSSO, CANTORE, BERGER, and NATALI. Upon information and belief, this teaching assistant was transferred from Long Beach Middle School within a week.

139.   In the aftermath of the latest round of internal investigations, conducted in or about Spring and through the Fall of 2014 by Defendants RUSSO, CANTORE, BERGER, and NATALI, Defendant WEISS, in furtherance of the policy of concealment to which him and Defendants RUSSO, CANTORE, BERGER, and NATALI agreed, instituted an additional policy to further conceal the acts of abuse, namely, arranging for the silent resignation of complaining witnesses.

140.   Upon information and belief, as of the Fall of 2014, several complaining teachers have been permitted to resign in silence, among which was Defendant SCHNEIDER – resignations brokered and effectuated directly by Defendant WEISS.

141.   Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS effectively bartered Plaintiff RG's constitutional rights to bodily integrity and the equal protection of the laws for the purpose of preserving their own careers and ensuring that the District continued to receive financial support for their special education programs.

142.   As a result of the conspiracy to conceal the acts of abuse entered into by Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS, Plaintiff RG was left to suffer at the hands of Defendants WEITZMAN, LILLEY, and SCHNEIDER for years, thereby sustaining severe physical and psychological damages.

## SEVENTH CAUSE OF ACTION

42 U.S.C. § 1986 – Action for Neglect to Prevent
(As against Defendants Weitzman, Lilley, Schneider)

143.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

144.   At all times herein referenced, the individually named Defendants did conspire to deprive Plaintiff RG of his constitutional rights on the basis of his disabilities as set forth in the preceding paragraphs.

145.   At all times herein referenced, Defendants WEITZMAN, LILLEY, and SCHNEIDER expressly conspired to continue to abuse Plaintiff RG and to conceal their acts of abuse.

146.   Defendants WEITZMAN, LILLEY, and SCHNEIDER, at all times, were in a position to cease their activities of abuse and concealment and thereby to ensure that Plaintiff RG would no longer be subjected to the continued violation of his bodily integrity.

147.   Defendants WEITZMAN, LILLEY, and SCHNEIDER failed to terminate their conspiracy and to prevent the abuse of Plaintiff RG despite the fact that they were, at all times, in an unimpeded position to do so.

148.   As a direct and proximate result of Defendants' WEITZMAN, LILLEY, and SCHNEIDER failure to cease their conspiracy and/or to intervene to prevent it, Plaintiff RG sustained severe physical and psychological damages.

## EIGHTH CAUSE OF ACTION

42 U.S.C. § 1986 – Action for Neglect to Prevent
(As against Defendants Russo, Cantore, Berger, Natali, and Weiss)

149.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

150.    At all times herein referenced, the individually named Defendants did conspire to deprive Plaintiff RG of his constitutional rights on the basis of his disabilities as set forth in the preceding paragraphs.

151.    At all times herein referenced, Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS had actual knowledge of the acts of abuse being perpetrated at the hands of Defendants WEIZTMAN, LILLEY, and SCHNEIDER and were in a position to intervene so as to protect Plaintiff RG.

152.    Despite being in an unimpeded position to take steps to protect Plaintiff RG, Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS deliberately chose to conceal reports of abuse brought to their attention and threatened to terminate, transfer, and/or permit the silent resignation of complaining witnesses.

153.    Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS thus failed to prevent the conspiracy and actions of Defendants WEITZMAN, LILLY, and SCHNEIDER, as well as their own conspiracy to conceal the acts of abuse to which Plaintiff RG was being subjected.

154.    As a direct and proximate result of Defendants' RUSSO, CANTORE, BERGER, NATALI, and WEISS failure to cease their conspiracy and/or to intervene to prevent it, Plaintiff RG sustained severe physical and psychological damages.

## NINTH CAUSE OF ACTION

42 U.S.C. § 1983 – Title II of the ADA
(As against all Defendants)

155.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

156.    Plaintiff RG is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2).

157.    Defendant LONG BEACH PUBLIC SCHOOLS is a public entity subject to the ADA as it receives federal financial assistance for, among other things, its special education programs and services.

158.    Plaintiff RG was actively discriminated against by Defendants WEITZMAN, LILLEY, and SCHNEIDER, on the basis of his disabilities by being subjected to years of inhumane and sadistic abuse, and physical and psychological harm.

159.    Plaintiff RG was actively discriminated against by Defendants RUSSO, CANTORE, BERGER, NATALI, and WEISS, on the basis of his disabilities, as a result of their deliberate policies to conceal the acts of abuse being perpetrated by Defendants WEITZMAN, LILLEY, and SCHNEIDER.

160.    As a direct result of the District's deliberate policies, actions, and omissions in violation of Title II of the ADA, Plaintiff RG was deprived of the protections of the ADA, subjected to deliberate and calculated discrimination, and sustained severe physical and psychological damages.

## PRAYER FOR RELIEF

**WHEREFORE**, upon all of the facts and circumstances herein alleged, Plaintiffs respectfully request that this Court:

A.   Grant judgment against the Defendants on each and every cause of action as alleged and delineated herein;

B.   Grant compensatory damages against the Defendants in the amount of $10,000,000.00 (TEN MILLION) dollars;

C.   Grant punitive damages against the Defendants in the amount of $10,000,000.00 (TEN MILLION) dollars;

D.   Grant an award of reasonable attorney's fees and costs expended in connection with the prosecution of this action pursuant to 42 U.S.C. § 1988;

E.   Grant any such further relief as this Court may deem just, proper, and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated:   Garden City, New York
          April 21, 2016

GERSTMAN, SCHWARTZ & MALITO, LLP

By: _____
      Stanislav Sharovskiy, Esq. (SS 4536)
      1399 Franklin Avenue, Suite 200
      Garden City, New York 11530
      Tel. No.: (516) 880 – 8170
      Fax No.: (516) 880 – 8171